The next case today is Margaret Benson v. Wal-Mart Stores East L.P., Appeal No. 20-1495. Attorney LaRanger. May it please the court, my name is Guy LaRanger and I represent the appellant Margaret Benson. Beginning with the first claim for disability discrimination, with regard to the prima facie case, the sole element is whether Ms. Benson was a qualified individual under the Discrimination Act. The court found as a matter of law, based on 21 alleged unauthorized absences, that she was not. We believe that finding was an error. I look at it as a three-part analysis. First, we took the deposition of Wal-Mart's most knowledgeable witness concerning the witnesses conceded that there were 17 alleged absences at issue. Wal-Mart did not dispute those facts. The next part really covers from when Ms. Benson returned from leave in October of 2016 until mid-December of 2016, when she had a meeting with the store manager, Bradstreet. During that time, Benson had approximately 9 or 10 absences. Benson testified that on most, if not all of the absences, she gave proper notice as required as to the absences and the reason for the absences. In fact, she notified management that workers' compensation attorneys were involved. Despite that, in mid-December, Ms. Bradstreet testified she planned to terminate Ms. Benson for having 9 or 10 alleged absences. This in itself calls into question why Benson had not been questioned before about these absences. Wal-Mart testified that whenever somebody has an unauthorized absence after one or two occurrences, they're questioned. Nobody questioned Ms. Benson about it. Despite that fact, Ms. Benson went into the meeting and explained to Bradstreet that most, if not all of the absences involved her workers' compensation issue or illnesses related to it. And she also told Ms. Bradstreet that she could contact the workers' compensation attorneys to confirm that. She also explained how she had given notice to the store manager as required of her absences. At the conclusion, Ms. Bradstreet did not terminate Ms. Benson. She didn't take any action whatsoever. So a trier of fact could look at this and reasonably conclude that these 9 or 10 absences were in fact authorized. Subsequent to that, which is really the third part of the absence issue, there were 7 occurrences in which Wal-Mart claims that Benson refused the directive to give notice. The record contains much information, much evidence of Benson not only now providing advance notice, but also providing documentation, providing an M-1 form, providing substantial information or notice with regard to each of the incidents. So a trier of fact could clearly look at this. Is this notice before the fact? Yes, ma'am. She gave notice before the fact, and then on many occasions she would come in, especially after the meeting, and provide an M-1, which is the workers' compensation documentation, or other documentation to verify that she had been to a medical appointment. So a trier of fact would clearly look at this. So Wal-Mart's brief seems to suggest that they disagree with that, so is it your position that this comes down to it being a disputed fact? It is exactly a disputed fact, Your Honor. Both sides have very different versions of what happened. But what's interesting with Wal-Mart's position is most of this is post-termination analysis, saying Benson went to an appointment for two hours and yet she didn't come back four hours later. That was never looked at by management. So we have disputes as to whether or not there was notice and or related to the workers' compensation, and that is a central issue here. Furthermore, with regard to whether this was an essential function, an essential function is the courts of hell. It's a complex issue. In attempting to satisfy its burden, Wal-Mart simply pointed to two facts. It's the ability to do the job. It's hard to see how that being physically present is not an essential function of the greeter job. It may not be an essential job, but it is an essential function of that job. Well, Your Honor, a juror could look at this and say, well, if this is an essential function, if being present is an essential function, when Wal-Mart had notice of Benson's absences, why didn't it schedule something? Because there's a difference between it being an essential job and an essential job function. I'm sorry, Your Honor? Because there's a difference between something being an essential job. They didn't necessarily, at one point my recollection is that Wal-Mart got rid of all their greeters and there was a public outrage and then they brought them back. So it may not necessarily have viewed them as it being an essential job, but if they were going to have these positions, then you've got to be able to do the positions. My only point is a juror could look at this and say, well, if it was an essential function of her job, when she notified Wal-Mart that she would be absent for a medical appointment, why didn't they schedule somebody to back her up? They didn't do that. So they could determine that this was not an essential function. But regardless, I think we have... Let me ask you, there's a case that from the main law court, Carden de Selo versus Mercy Hospital 2017, and it's alluded by Wal-Mart. You don't distinguish or discuss that in your reply, but in that case, the main law court held that the Main Human Rights Act, under the act, leave is not a reasonable accommodation. Could you distinguish that case or address that case? Yeah. Here, Benson was not asking for leave. She was simply asking that Wal-Mart continue to comply with its policy, finding that workers' compensation absences are related to injuries, not be counted. If Wal-Mart had said no, then Benson could have said, okay, I'll schedule my appointments after work. I'll schedule my appointments on weekends. But Wal-Mart said, no problem. We can continue to accommodate you as we've done beforehand. And the issue is, can a person do a job with or without accommodation? And here, she certainly could do it with accommodation, which was actually established Wal-Mart policy. And in fact, that goes into our claim for failure to accommodate. Wal-Mart claims Benson never requested an accommodation. She certainly did. When she returned to work, she asked that Wal-Mart continue to accommodate her by allowing her to take time off necessary to go to workers' compensation medical appointments. Wal-Mart agreed to that. But yet now we see they're saying that they're penalizing. They're finding those as occurrences. So on the one hand, they said that they would accommodate her. But then in fact, they didn't by terminating her. So with regard to the failure to accommodate, she did ask for an accommodation. In fact, Wal-Mart does not dispute that fact. They don't dispute that fact. And so on that basis, I'm sorry. And let me ask you what you're arguing right now. That would be your evidence on the record, or at least for a trial issue, as the pretext under the summary judgment standard under Maine law. Would that be correct? Exactly, Your Honor. With regard to pretext, a jury can look at pretext if the reasons given are false or pretextual. Here, Wal-Mart gave two reasons. They said her absences were not related to workers' compensation issues, and she refused to provide Wal-Mart with information about it. The record, as noted, contains much evidence that many, if not all of these appointments were workers' compensation related. And it's almost undisputed that Benson repeatedly, continually over this time period gave notice of the medical appointments. So a juror could look at this and say both these reasons are false. This is pretextual. And with regard to the retaliation claims, we have three retaliation claims. With regard to the first one for the filing the initial lawsuit, Wal-Mart claims that the temporal relationship of a year was too long. But what Wal-Mart misses is that in this particular case, we took the depositions of the store manager of Bradstreet and the human resources director only two months before Benson returned from leave. Prior to Benson going on leave and prior to the depositions, Wal-Mart didn't make any issue, didn't create any issue about Benson missing almost 50 days because of workers' compensation appointments or medications. But afterwards, suddenly, it became an issue. So a trial could look at that temporal relationship of two months and find that that satisfies the prima facie case. With regard to our second claim for retaliation, the second claim for retaliation is after Benson asked for the accommodation on October 16th to continue to adhere by Wal-Mart policy and missed time because of the medical appointments. They began to take adverse actions against her. Wal-Mart doesn't dispute that. They only dispute they claim that Benson never asked for an accommodation aside from requesting to miss time any time she wanted to. That's nowhere in the record. The record only contains the request from Benson to Wal-Mart to continue to adhere to its policy and allow her to miss time for medical appointments. So based on the totality of the evidence, I think the court, a trier fact, would clearly find there are factual disputes whether or not Benson was a qualified employee who could do her job with or without accommodation and whether Wal-Mart retaliated against her by her first lawsuit or for requesting a continued accommodation. Thank you, Mr. Luranger. Mr. Judge Helpe? Just one very quick follow-up question. Would you distinguish the Theriot case from this court, 2018 case, your counsel in that case? That was a summary judgment that was affirmed. How would you distinguish that scenario from this scenario? Well, the Theriot case, I don't think it involved the disability discrimination. I think it didn't involve a failure to accommodate. It involved the disability discrimination case. In that case, the court found that there was no evidence of a causal link. Here we have substantial evidence that Ms. Benson did provide the notice and the reason for her absences. Thank you. All right. Thank you. We'll hear from Ms. Rand. Good morning. Excuse me. Attorney Luranger, please mute your device at this time, including your camera. And please introduce yourself on the record, Attorney Rand. Thank you. Good morning. May it please the court, I'm Catherine Rand. I represent Wal-Mart, the defendant in this case. I think there are disputes between counsel about what the record reflects. Clearly are. The record speaks for itself, fortunately. And I'd like to talk a little bit to start about what the record actually reflects. We have an attendance policy that authorizes absences for workers' compensation. It's undisputed that Wal-Mart has always interpreted that policy, refer to leaves of absence or medical appointments, the time needed to attend medical. Attorney Luranger referenced a request for accommodation when Ms. Benson returned to work following her leave of absence. That request, which is in their paragraph 20 on Appendix 23, was to miss work occasionally for workers' compensation for medical appointments. The evidence shows that a very, very small fraction of Ms. Benson's absenteeism had anything to do with medical appointments at all. We'll leave the workers' comp piece to Ms. Benson. She missed work eight times because she was feeling ill. She missed two times because of weather, two times because of car trouble. Those total 12. Those are last-minute call-outs for which she could not possibly have provided advance notice or requested the time off in advance because she had no notice herself, presumably. All right, so illness related to a workers' comp claim doesn't count, just doctor's appointments? Correct. However, it might count if she requested a leave of absence as a result. And the record reflects that the leave of absence that Ms. Benson took during the period leading up to her return from work was actually a leave of absence because her medication was making her ill. Requested a leave of absence. Walmart requested some medical documentation to substantiate that. Her leave was granted and she was allowed to miss work as a complete being out of work, which, as you can imagine, is a lot easier for Walmart to accommodate than learning the day of 12 times that they won't have a people breeder that day. So that would be the exception with the feeling ill. Okay, so if the day of I'm not feeling well is related to her workers' comp injury, then you're saying that that's not a valid excused absence. That's correct. She could request a leave of absence if she's unable to reliably come to work because she's feeling ill. So she would have to request a leave of absence for one day? No, intermittent leave may not be a leave of absence. Intermittent leave under Maine law at the time, or a full leave, wasn't required as a matter of law. In Ms. Benson's case, in the past when she was having trouble coming to work because she was feeling ill, she requested leave and was given leave. I understand extended leave, but I'm just saying suppose as a result of an injury, you periodically are symptomatic and need a leave. When they leave, you're saying that that's not permissible. I'm saying that there's a process for requesting approval. You wake up in the morning and because of your injury, you're sick. You can't give advance notice because you didn't know you were going to be sick until you woke up. Okay, that's not a leave. You're just saying that counts as an unexcused absence. Correct, unless that employee pursues an approved leave of absence, which may or may not be an intermittent leave. But Ms. Benson understood how to do that. She did it before. Mr. Larranger says she was not requesting leave. And what leave means is permission to miss work.  She didn't ask for leave. If only for a day. Yes, and in this case, she did not tell Walmart that she was missing work. There's also no evidence in the record that she told Walmart she was missing work because of workers' compensation-related illness. She told Walmart that she had the flu. That's what the record reflects. At any rate, the vast majority of her call-outs were unexpected, unplanned. She did have medical appointments on some days. I'm sorry, counsel. I just want to follow up just briefly on Judge Thompson's questions. So, in the case of waking up feeling ill, calling in and saying, I'm ill, she has to take another step and say, will you approve leave? The issue is real. So, the attendance policy allows employees for nine unexcused absences. That provides some room for people feeling ill and not being able to come to work. My point was, if this feeling ill from medication is a chronic issue that's going to cause her to unexpectedly miss work excessively to the degree here, yes, the expectation would be that she would request the leave of absence, whether intermittent or full. And there's a process. So, on the 10th occasion where someone is ill and they've used up the nine, they make the phone call and say, I'm ill. They have to take one more step and say, can I have leave today? Well, they ought to have been having, and they were in this case, having conversations with management before they get to that point so that they know that their attendance is becoming an issue. And that's often what triggers employees to request a leave of absence, that they have excessive unexcused absences. They want to embark on that process, which involves a sharing of medical information so that Walmart can understand what the prognosis is. What's the answer to my question about what she's supposed to do on the 10th day? The answer to the question is on the 10th day, if she has not requested a leave of absence, she will likely be terminated under Walmart's appendix. So, she wakes up and is feeling ill, calls in and says, I'm feeling ill. What are the magic words beyond that? Sedgwick is the company that administers Walmart's workers' compensation and other forms of leaves of absence. That's well publicized, and employees know that if they have an attendance issue that's related to a medical issue, that that is the step that one takes to open a leave of absence, which means permission to be away from work. Yes, but you've said she could have requested intermittent leave of absence. I assume that means you can request it on that day or you could get sort of a blanket. Whenever I'm feeling ill, I don't have to come in. I assume those are the two possibilities that you're talking about. Intermittent or a full leave of absence, both of those are administered by Sedgwick, Walmart's leave administrator. And in both of those cases, the employee opens a leave request. Some medical information is requested from the doctors. I'm not trying to put too fine a point on it. I'm just trying to understand. So is it not implied on that 10th occasion when she calls in and says, I can't come into work, I'm ill, that she's requesting leave? Well, in this case, no, not necessarily. So not all illnesses, not all employees who miss work due to illness will necessarily qualify for a leave of absence. Walmart's attendance policy is, with certain exceptions, a no-fault attendance policy. And with certain exceptions, like those leaves that it's required to grant as a matter of law, the reason for an employee's inability to come to work doesn't impact the negative impact that that has on operations. So simply feeling ill may or may not have qualified for a leave in the first place. So that wasn't my question. My question was, isn't saying I'm ill and can't come into work an implied request for leave? And I think the answer is no more than any time an employee says I'm feeling ill and can't come into work. It may be an implied request for leave, but it's not Walmart's process for leave. She understood the process for requesting leave. And we don't even understand the process. That's why we keep trying to figure out what it is. Because we start with the proposition that she had some kind of work-related injury that caused her to be ill. And from the record, it seems that whatever it was resulted in ongoing medical issues. So I don't understand. And I don't think Judge Howard and Judge Helpe understand what the policy is and how you go about getting an excused absence. So the policy when it comes to need to miss work because one is feeling ill, is that the employee... Miss work. Counselor, I need you to focus on, you need to miss work because you're ill because you're ill as a result of a work-related accident. That's what we're trying to put together. At least that's what I'm trying to put together. Keep it connected to work-related injury. The process for requesting leave or permission to be away from work if you're ill because of a work-related injury is to contact Sedgwick, which is Walmart's leave administrator. That's a process that's communicated well to employees. And it's one that Miss Benson followed in the past, which was well aware of how to open a leave of absence. All right. So you wake up sick. The sickness is related to the work-related injury. You do what? Contact Sedgwick and say, I'm sick today because of lingering effects of the work-related injury. If you just did that one time, an employee may choose to do nothing, and that may be an unauthorized absence. But as a pattern develops, and an employee is seeing that they are missing work and developing what the store considers to be an attendance problem because of a worker's compensation illness, the employee calls Sedgwick and says, I am missing work chronically or periodically because of an illness related to my worker's compensation claim. Sedgwick would open a leave process where they would get some information from the doctor. How often can we expect Miss Benson to be feeling ill? How long can we expect this to last? All of those questions that would help Sedgwick and Walmart decide whether a leave was a reasonable accommodation in this case. What you're arguing right now, and again, doesn't this create factual issues as to the leave? And if so, wouldn't plaintiff's appellant's counsel have at least for purpose of summary judgment established as a material issue of fact as the pretext, which in turn would warrant a reversal and the case would have to go to trial? What's your position as to that? Well, two. First of all, at this point in time, leave was not a reasonable accommodation under the Main Human Rights Act. Second, and second of all... But what about your policy? If you have a policy that says work-related absences don't count as unexcused. That isn't what the policy says. The policy says that absences related to worker's compensation will be authorized, and the policy has consistently been interpreted with Ms. Benson and others to refer to leaves of absence that are approved through Sedgwick, through the process that we've spent a lot of time on, and medical appointments. There's no medical appointments needed to a worker's compensation medical appointment. In this case, and I'd like to circle back and answer the second half of the question in just a second. Even on the days when she had medical appointments, she was missing full days of work and staying home in the morning before she went to her worker's compensation medical appointments. That's not disputed. For example, you have one example, is that she had an appointment, maybe let's say at 10 in the morning, she could have shown up from 8.30 to 10, or 8 to 9.30, and that would be what you're arguing, correct? Absolutely, yes. If leave were a reasonable accommodation under the Main Human Rights Act, or if she wasn't required to request a leave under the policy, and she was, Ms. Benson would still, as a matter of law, have to introduce some evidence that this time away from work was necessary in order to get her better and back to work. Leave is a reasonable accommodation, is a reasonable accommodation outside of Maine during this period of time, because it allows the employee to heal, or get better, and come to work. And it can't seriously be questioned that coming to work regularly was an essential function of Ms. Benson's job. We do many things remotely these days, but we have not yet figured out how to brief people in the store remotely. They counted on her to be there, and she wasn't there. I'd like to speak briefly about the broader issue of causation. We're giving you an extra minute, Counsel. Okay, thank you. I'll be very brief. The facts here, the timeline does not create any picture of causation, any causal link. Benson won the first lawsuit, had been pending for some time. Yes, individuals were deposed before she returned to work. It's undisputed that nobody was on her about her attendance for the first couple of months. They sort of let it slide for a while. When they addressed it with her, they continued to give her more time to demonstrate that she was actually missing work due to medical appointments, which is what she told them she was missing work due to. The evidence doesn't show that they were harsher with her than with other employees. In fact, the evidence is clear that they provided her with substantially more leeway, substantially more leeway than they provided other employees who had attendance issues. With that, I will rest on the brief, and I do just trust and hope that the court will review the record sufficiently to understand what the evidence is and isn't, because I'm concerned that there are a number of characterizations that aren't supported. One thing you can rest assured is that we will be very familiar with the record. Don't worry about that. Thank you for your time. That concludes argument in this case. Attorney LaRanger and Attorney Rand, you should disconnect from the hearing at this time.